Dolores CONDE, Plaintiff–Appellant,

v.

COLORADO STATE DEPARTMENT OF PERSONNEL; Joann Soker, State Personnel Director, in her official capacity; Colorado Civil Rights Division, Jack Lang y Marquez, Executive Director, in his official and individual capacities; Colorado State Personnel Board; and Donald Luttrell, Chairman, in his official capacity, Defendants–Appellees.

No. 93CA0002.

Colorado Court of Appeals, Div. III.

March 10, 1994.

Law Offices of Michael L. Smith, Michael L. Smith, Amy L. Brewer, Marybeth Sobel, Denver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., George S. Meyer, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge DAVIDSON.

Plaintiff, Dolores Conde, appeals from the trial court's dismissal of her claim for relief under the Colorado "whistleblower" statute, § 24–50.5–105, C.R.S. (1988 Repl.Vol. 10B), and from the summary judgment entered in favor of defendant, Jack Lang y Marquez, in his individual capacity, on her claim for civil rights violations under 42 U.S.C. § 1983 (1988). We affirm.

Plaintiff was a civil rights specialist with defendant Colorado Civil Rights Division (CCRD) from 1984 to 1993. Defendant Jack Lang y Marquez was Director of Compliance, and plaintiff's immediate supervisor, until he became Acting Executive Director of CCRD in September 1989. He was later appointed to this position on a permanent basis.

In March 1989, and on several occasions thereafter, plaintiff approached defendant Lang y Marquez with a complaint concerning the accuracy of time records kept by two other CCRD compliance investigators. Dissatisfied by his response to her concerns, plaintiff eventually filed a formal "whistleblower" complaint against her co-workers with Lang y Marquez.

When Lang y Marquez became permanent Executive Director of CCRD, the Director of Compliance position was left vacant. Plaintiff applied for this promotional position as did other compliance investigators.

After taking a written test and appearing at an oral board interview, plaintiff was among the three top scoring applicants and was interviewed by Lang y Marquez. On February 21, 1990, Lang y Marquez selected one of the other three applicants to fill the position.

In March 1990, plaintiff appealed Lang y Marquez's decision not to promote her to the State Personnel Board. She alleged that this action was a prohibited retaliation for her "whistleblower" complaint.

In May of 1990, plaintiff filed a notice of claim pursuant to the Colorado Governmental Immunity Act (CGIA) with the Attorney General. In September 1990, plaintiff received notice that the State Personnel Board had found no reasonable basis for her "whistleblower" retaliation claims. Thereafter, plaintiff filed suit in the trial court pursuant to § 24–50.5–105, C.R.S. (1988 Repl.Vol. 10B) against Lang y Marquez, CCRD, the Colorado State Personnel Board, Colorado State Personnel Board Chairman Donald Luttrell, the Colorado Department of Personnel, and the Colorado Department of Personnel Director, Joann Soker.

Defendants moved to dismiss plaintiff's "whistleblower" claim pursuant to C.R.C.P. 12(b)(1) and C.R.C.P. 12(b)(5) because of lack of timely notice under the Colorado Governmental Immunity Act. Plaintiff then added a claim for violation of her civil rights under 42 U.S.C. § 1983 against Lang y Marquez. Plaintiff also asserted several other claims, but these were either dismissed by her voluntarily in the trial court, or are otherwise not the subject of this appeal.

The trial court granted defendants' motion to dismiss plaintiff's "whistleblower" claim. Thereafter, the trial court granted summary judgment in favor of Lang y Marquez on plaintiff's 42 U.S.C. § 1983 claim on the ground of qualified immunity.

## I.

Plaintiff argues that the trial court erred in dismissing her "whistleblower" claim. We disagree.

## A.

Plaintiff first argues that the trial court erred in dismissing her whistleblower claim for relief in its entirety on the grounds that she did not comply with the CGIA notice requirement. Plaintiff contends that her notice contained sufficient information regarding her claim so as to "substantially comply"

with the CGIA notice requirement pursuant to our supreme court's interpretation in *Woodsmall v. Regional Transportation District*, 800 P.2d 63 (Colo.1990). She maintains that the trial court analyzed her notice under an "absolute" or "strict" compliance standard.

We conclude that plaintiff's CGIA notice included sufficient information as to her intentions to bring a civil action based upon an invasion of privacy by Lang y Marquez and that the trial court erred in dismissing her "whistleblower" claim in its entirety on that basis. We also conclude, however, that insofar as this claim is based upon allegations of harassment and failure to promote, her CGIA notice was not within substantial compliance of the statutory requirements.

■ Because the whistleblower statute, § 24–50.5–103, C.R.S. (1988 Repl.Vol. 10B), was intended to create a non-contractual, statutory action which is tortious in nature, a claim brought under that statute is subject to the notice requirements of the Colorado Governmental Immunity Act, § 24–10–109, C.R.S. (1988 Repl.Vol. 10A). *State Personnel Board v. Lloyd*, 752 P.2d 559 (Colo.1988).

According to § 24–10–109 as pertinent here:

(1) Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

(2) The notice shall contain the following:

(b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of;

(d) A concise statement of the nature and the extent of the injury claimed to have been suffered;

Plaintiff's CGIA notice contains the following brief statement of the factual basis of her claim:

On or about March 9, 1990 at an unknown time in the evening, Jack Lang y Marquez, Director of the Colorado Civil Rights Division, a state employee, without state employee Dolores Conde's permission, discussed a grievance and civil rights and whistleblower claim filed by Ms. Conde against him, with Ms. Conde's [ex-husband] at a meeting of the American GI Forum. Dolores Conde has been divorced from [her ex-husband] for 15 years. Other person(s) outside of the state system have also advised Dolores Conde that Director Jack Lang y Marquez has discussed Ms. Conde's grievance and whistleblower complaint and personnel issues with them and all of the unauthorized communications have occurred within 180 days of this notice.

Plaintiff's CGIA notice contains the following brief description of the nature of the injury suffered:

The total extent of the injury to Ms. Conde's reputation, career, civil rights, and promotability are unknown at this time, although Ms. Conde asserts that her reputation, status, tenure and promotability as a state employee have been adversely impacted by Mr. Lang y Marquez's unauthorized statements about Ms. Conde's whistleblower grievances and civil rights claims. Ms. Conde's grievances and civil rights claims and whistleblower complaint are currently pending before the State Personnel Board in Conde v. CCRD, Case No. (unassigned). It is asserted that Mr. Jack Lang y Marquez has committed statutorily prohibited retaliation against Ms. Conde for her whistleblower complaints of time sheet abuse and falsification.

Apparently proceeding on the erroneous assumption that a notice of claim was not required under the "whistleblower" statute, plaintiff's CGIA notice specifically separates her invasion of privacy claim from her civil rights and "whistleblower" claims, pending elsewhere.

Subsequently, in plaintiff's complaint in this civil action, she repeated her allegation that "[o]n or about March 13, 1990, Defendant [Lang y] Marquez attended a reception at the Mile High GI Forum where he discussed Plaintiff Conde as a 'personnel problem' with Plaintiff's ex-husband of 15 years." Plaintiff further alleged, however, that on or about February 22, 1990, "Defendant [Lang y] Marquez and Defendant CCRD retaliated against her by ... [f]ailing to promote Plaintiff to the position of Director of Compliance"; and by, on a more or less continuing basis, "[c]reating a hostile and intolerably harassing environment in the terms, conditions and privileges of Plaintiff's employment." None of these allegations was contained within plaintiff's CGIA notice.

■ We conclude that plaintiff's CGIA notice does provide a concise statement as to the factual basis of the alleged incident occurring in March 1990 at the GI forum, that is, alleged unauthorized communications to persons outside of the state personnel system. Her CGIA notice, however, contained no references whatsoever to incidents of harassment or retaliation taking place in February 1990. These events as alleged in her complaint took place at different times, on different dates, and under different circumstances than the alleged unauthorized communications, and are alleged to have resulted in injuries of a different nature.

■ Plaintiff nonetheless contends that because she referred to her "whistleblower" complaint in her CGIA notice seven times, and alluded to her promotability, she has substantially complied with the CGIA notice requirements. We do not agree.

Prior to 1986, § 24–10–109(1) expressly required "substantial" compliance with the CGIA notice requirement. See Colo.Sess. Laws 1979, ch. 219 at 862–63. In 1986, the statute was amended and the word "substantial" deleted. See Colo.Sess.Laws 1986, ch. 166 at 877.

In 1990, our supreme court considered the impact of this change and, after examining the legislative history of the 1986 amend-

ments, determined that the General Assembly "did not intend to create a standard of absolute or literal compliance with the notice requirement, but rather intended a degree of compliance that was considerably more than minimal but less than absolute." *Woodsmall v. Regional Transportation District, supra,* 800 P.2d at 68. The court characterized this level of compliance as "substantial compliance," the same term as was expressly deleted from the statute by the General Assembly.

While arriving at this conclusion, however, the court did not find that the removal of the term "substantial" was meaningless. The court noted that, according to legislative history, the deletion was meant to prevent courts from "seizing on the word 'substantial' to allow all manner of defective notice to be considered." *Woodsmall v. Regional Transportation District, supra,* 800 P.2d at 68. Based upon this reasoning the court further concluded that substantial compliance requires a good faith effort to include within a written notice, to the extent reasonably possible, each item of information listed in § 24–10–109(2).

Here, plaintiff's CGIA notice contains no pertinent factual information whatsoever concerning incidents of retaliatory harassment and failure to promote in February 1990 although she was aware of these incidents at the time she filed her notice.

■ Plaintiff also argues that her claim should not be barred because, prior to filing her CGIA notice with the Attorney General, she served a copy of the appeal of her Personnel Board action with an Assistant Attorney General and that document contained sufficient information to constitute substantial compliance with the notice requirements of § 24–10–109. We disagree.

Under § 24–50.5–104, C.R.S. (1988 Repl. Vol. 10B), the aggrieved employee may file a written "whistleblower" complaint with the State Personnel Board and, if no reasonable basis for the charges is found, may bring a civil action under § 24–50.5–105. In *State Personnel Board v. Lloyd, supra,* our supreme court specifically rejected the argument that compliance with these procedural requirements of the "whistleblower" statute fulfills the CGIA notice requirements.

■ Plaintiff further contends that the trial court erred by not considering the extent to which defendants possessed actual notice of her claim and were therefore able to defend against it. We disagree.

"In determining whether a claimant has substantially complied with the notice requirement, a court may consider whether and to what extent the public entity has been adversely affected in its ability to defend against the claim by reason of any omission or error in the notice." *Woodsmall v. Regional Transportation District, supra,* 800 P.2d at 69. Actual knowledge of the claim, however, does not take the place of formal notice. *See Stone Environmental Engineering Services, Inc. v. Colorado Department of Health,* 762 P.2d 737 (Colo.App.1988); *Lloyd v. State Personnel Board,* 710 P.2d 1177 (Colo.App.1985) *rev'd on other grounds sub nom. State Personnel Board v. Lloyd, supra.*

Finally, we note that, after the dismissal of her claim, plaintiff submitted a motion to file a fourth amended complaint. In conjunction with that motion, she submitted a new notice of claim asserting that the 180–day period for filing notice did not begin to run until she received a ruling from the Personnel Board on her "whistleblower" action. The new notice specifically set forth the factual basis for her allegations of harassment and failure to promote. The trial court denied her fourth motion to amend her complaint, and plaintiff did not appeal from this ruling.

B.

■ The question then becomes: Is an invasion of privacy as alleged by plaintiff a disciplinary action under the "whistleblower" statute? We conclude that it is not.

According to § 24–50.5–103(1), C.R.S. (1988 Repl.Vol. 10B): "[N]o appointing authority or supervisor shall initiate or administer any disciplinary action against an employee on account of the employee's disclosure of information." Section 24–50.5–102(1), C.R.S. (1988 Repl.Vol. 10B) defines disciplinary action as "any direct or indirect form of discipline or penalty, including, but not limited to,

dismissal, demotion, transfer, reassignment, suspension, corrective action, reprimand, admonishment, unsatisfactory or below standard performance evaluation, reduction in force, or withholding of work, or the threat of any such discipline or penalty."

■ "The construction of a statute is a question of law." *Colorado Division of Employment v. Parkview Episcopal Hospital,* 725 P.2d 787, 790 (Colo.1986). The words and phrases of the statutory language should be given their plain and ordinary meaning. *Colorado Common Cause v. Meyer,* 758 P.2d 153 (Colo.1988).

■ "Where the statutory language is clear and unambiguous there is no need to resort to interpretative rules of statutory construction; the statute, in that instance, should be applied as written, since it may be presumed that the General Assembly meant what it clearly said." *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989). There should be no need to resort to a forced, subtle, strained, or unusual interpretation of plain and clear statutory language. *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973).

"Disciplinary" is defined as "of or relating to discipline; designed to correct or punish breaches of discipline." *Webster's Third New International Dictionary* 644. "Discipline," as pertinent here, means "punishment by one in authority especially with a view to correction or training; to punish or penalize in any way often by infliction of extra tasks or by loss of privileges." *Webster's Third New International Dictionary* 644–45.

Unlike the examples of disciplinary actions which are enumerated in § 24–50.5–102(1), the unauthorized communications alleged by plaintiff to have invaded her right to privacy are not related to discipline. The discussions of her grievance and civil rights and "whistleblower" claims were alleged to have taken place with plaintiff's ex-husband and other persons outside of the state system, who had no reason to know of or be concerned about her grievance.

■ Although plaintiff alleged in vague terms that her career, status, tenure, and promotability as a state employee have been adversely impacted, she has not indicated in what manner the discussion of her claims with *persons outside of the state personnel system* could be interpreted as an employment related disciplinary action. Since we conclude that her allegations of invasion of privacy are not "disciplinary actions" within the meaning of § 24–50.5–103(1), we therefore affirm the trial court's dismissal of her "whistleblower" claim, albeit on slightly different grounds.

II.

Plaintiff next argues that the trial court erred in dismissing her § 1983 action against defendant Lang y Marquez on the grounds of qualified immunity. We disagree.

■ In § 1983 actions, the doctrine of qualified immunity protects governmental officials sued in their individual capacity from personal liability in the performance of discretionary functions unless their actions violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App.1989).

■ The qualified immunity doctrine attempts to allow the vindication of citizen's rights without also making it impossible for public officials to anticipate under what circumstances their conduct may give rise to liability. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Therefore, "[t]he court must first determine whether the alleged conduct sets out a [federal] constitutional [or statutory] violation, and secondly, it must determine whether the constitutional standards applicable to the facts of the case were clearly established at the time of the alleged violation." *Abouzari v. Foster,* 795 P.2d 1386, 1389 (Colo.App.1990); *see also Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (It is a threshold question whether a plaintiff has asserted a violation of a federal statutory or constitutional right.).

■ In other words, to defeat an assertion of qualified immunity, the unlawfulness of the conduct must be apparent in light

of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's conduct was clearly prohibited. *Hannula v. City of Lakewood,* 907 F.2d 129 (10th Cir.1990). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ungerer v. Moody,* 859 P.2d 251, 255 (Colo. App.1993).

The plaintiff's complaint must adequately state a claim of violation of clearly established law; if not, a defendant pleading qualified immunity will be entitled to dismissal before discovery commences. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Once the defendant raises a qualified immunity defense, the plaintiff assumes the burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law. *Martinez v. Harper,* 802 P.2d 1185 (Colo.App.1990). Furthermore, because qualified immunity means immunity from suit as well as from liability, the issue should be decided as early as possible in the litigation process. *See Hunter v. Bryant,* 502 U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

We note that, here, plaintiff at no time has alleged that her rights under the First Amendment were violated by defendant's actions. Nonetheless, state law which creates a property interest protected by the Fourteenth Amendment may relate to a claim of deprivation of due process under state law and form the basis of a § 1983 action. *Davis v. Scherer, supra; see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

A "plaintiff must plead facts which, if true, describe a violation of clearly established statutory or constitutional right...." *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir. 1987); *see also Kennedy v. City of Cleveland,* 797 F.2d 297 (6th Cir.1986).

In her complaint, plaintiff alleges that, because she was the best applicant, the failure to select her for promotion "strictly contraindicated the purpose of the merit system." Thus, her contention rests upon an asserted due process right to be selected for promotion. We do not agree that these allegations set forth a violation of a clearly established right.

By statute, an appointing authority is required to select "one of the three persons ranking highest on the eligible list for such position, or such lesser number as qualify, as determined from competitive tests of competence...." Section 24–50–115(5), C.R.S. (1988 Repl.Vol. 10B).

Prior to 1970, this "rule of three" was a "rule of one," compelling the appointing authority to fill the vacancy with the applicant obtaining the highest score on the eligibility test; thus, the change deliberately introduced an element of discretion into the final selection process. *Haines v. Colorado State Personnel Board,* 39 Colo.App. 459, 566 P.2d 1088 (1977).

A "necessary ingredient" of the "rule of three" is the appointing authority's right to select any of the highest three applicants. *Butero v. Department of Highways,* 772 P.2d 633 (Colo.App.1988). That selection cannot be overturned unless there is a violation of the constitution, statute, regulation or other illegality. *See Haines v. Colorado State Personnel Board, supra.*

Plaintiff concedes that she has no substantive due process right to promotion. *See Montoya v. City of Colorado Springs, supra; see also Bigby v. City of Chicago,* 766 F.2d 1053 (7th Cir.1985). And, according to clearly established law at the time of Lang y Marquez's actions, a reasonable public official was entitled to rely upon the "rule of three" and select any one of the three top applicants.

Here, it is undisputed that plaintiff was one of the top three scoring applicants and was placed on the eligibility list. She was interviewed by Lang y Marquez, as were the other two top scoring applicants, and all three were asked the same 11 questions. Utilizing the discretion granted by the "rule

of three," Lang y Marquez selected another duly qualified applicant.

Thus, the selection of a person other than plaintiff appears to have been in accordance with all applicable law pursuant to the State Personnel system. Plaintiff cites no authority, nor are we aware of any, that requires an appointing authority to disregard information obtained from prior working experience with an applicant and make his or her selection from the duly nominated three with, in effect, a *tabula rasa*. We note that if the law was to that effect, it would require difficult and potentially unlimited subjective inquiry in order to resolve whether an applicant has received proper consideration. *See Winn v. Lynn,* 941 F.2d 236 (3d Cir.1991).

So long as the integrity of the competitive examination process was not compromised, and so long as the appointing authority's decision did not rest upon factors such as race, color, creed, or gender, it is certainly not clearly established that, under the State Personnel system, an official must select a particular applicant. *See Butero v. Department of Highways, supra.*

Insofar as plaintiff contended in the trial court that Lang y Marquez engaged in a manipulation of the oral examination process intended to keep her from the eligibility list, such contentions are not significant here. Although she maintains these allegations on appeal, she acknowledged to the trial court that, even if a manipulation occurred, she nonetheless received one of the top three scores on the competitive examination.

Contrary to plaintiff's assertions, *Montoya v. City of Colorado Springs, supra,* does not establish a due process right to be chosen for promotion.

In that case, Montoya, a firefighter, claimed that he was improperly denied a promotion on the basis of his race. Because the applicants for fire captain were promoted strictly on the basis of their overall competitive examination scores, Montoya, who ranked sixth, was not promoted to one of the three positions open. As relevant here, a division of this court reinstated Montoya's claim for relief which asserted equal protection and due process claims based on a right to be considered for promotion in accordance with constitutional precepts forbidding racial discrimination and in accordance with the express policies and procedures adopted by the city.

Although *Montoya* does stand for the proposition that a public employee has a right to be considered for promotion in a non-discriminatory manner, it does not clearly establish a procedural due process right to be selected for promotion by an appointing authority under the "rule of three."

To the contrary, clearly established law at the time gave Lang y Marquez the discretion to choose among three applicants. As the trial court stated, "[according] to such procedure, defendant was free to appoint any one of the three and such appointment would have been proper and legal. There is no provision requiring him to explain his choice; no right of a non-appointed applicant to challenge his judgment." *Cf. Hinnen v. Kelly,* 992 F.2d 140 (7th Cir.1993).

Finally, insofar as plaintiff seems to argue that, based upon alleged remarks by Lang y Marquez, she was excluded from consideration for promotion in violation of her due process rights, her complaint fails to set forth any such claim. And, even if we take all of her assertions in her complaint as true, the undisputed facts reveal that plaintiff was duly interviewed and was asked the same questions as the other two candidates for promotion. Thus, Lang y Marquez' actions were objectively reasonable. *See National Camera, Inc. v. Sanchez,* 832 P.2d 960 (Colo. App.1991); *cf. Harlow v. Fitzgerald, supra.*

Accordingly, as plaintiff's complaint does not allege a violation of clearly established law, we agree that the trial court properly dismissed the claim.

The judgment of dismissal of plaintiff's "whistleblower" claim, and the judgment in favor of defendant on plaintiff's § 1983 claim are affirmed.

CRISWELL and TAUBMAN, JJ., concur.