921 P.2d 84 (1996)
The FREEDOM FROM RELIGION FOUNDATION, INC., a Wisconsin Nonprofit Corporation; The Colorado Chapter of the Freedom from Religion Foundation, Inc.; Glenn V. Smith; Lora J. Attwood; Robert A. Attwood; Jeff Baysinger; Robert H. Fenn; and Lee Whitfield, Plaintiffs-Appellants,
v.
Roy ROMER, Governor of the State of Colorado; Gale Norton, Attorney General of the State of Colorado; Gail Schoettler, Treasurer of the State of Colorado; Ken L. Salazar, Executive Director of the Colorado Department of Natural Resources; James Robb, Patricia McClearn, Clark Scriven, Kathleen Farley, and Jose Trujillo, members of the Board of Parks and Outdoor Recreation of the State of Colorado; Laurie Mathews, Director of the Division of Parks and Outdoor Recreation of the State of Colorado; Patrick Ahlstrom, Executive Director of the Department of Public Safety of the State of Colorado; Dr. A. Ray Chamberlain, Executive Director of the Department of Transportation of the State of Colorado; The City and County of Denver, Colorado; Wellington Webb, Mayor of the City and County of Denver, Colorado; Bruce Alexander, Manager of the Department of Parks and Recreation of the City and County of Denver, Colorado; The Board of Parks and Recreation of the City and County of Denver, Colorado; Christine DeRose, President of the Board of Parks and Recreation of the City and County of Denver, Colorado; Beth McCann, Manager of the Department of Safety of the City and County of Denver, Colorado; Michael Musgrave, Manager of the Department of Public Works of the City and County of Denver, Colorado; Patricia Schwartzberg, Manager of the Department of Revenue of the City and County of Denver, Colorado; The City Council of the City and County of Denver, Colorado; The County of Arapahoe, Colorado; Jeannie Jolly, John Nicholl and Thomas Eggert, Arapahoe County Commissioners; Dorothy Vogt, Treasurer of the County of Arapahoe; and Patrick Sullivan, Sheriff of the County of Arapahoe, Defendants-Appellees.
No. 95CA0433.
Colorado Court of Appeals, Div. IV.
June 27, 1996.
*86 Robert R. Tiernan, Denver, for Plaintiffs-Appellants.
Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Laura M. Maresca, Assistant Attorney General, Patricia Powell, Assistant Attorney General, Denver, for Defendants-Appellees Roy Romer, Governor of the State of Colorado, Gale Norton, Attorney General of the State of Colorado; Gail Schoettler, Treasurer *87 of the State of Colorado; Ken L. Salazar, Executive Director of the Colorado Department of Natural Resources; James Robb, Patricia McClearn, Clark Scriven, Kathleen Farley, and Jose Trujillo, members of the Board of Parks and Outdoor Recreation of the State of Colorado; Laurie Mathews, Director of the Division of Parks and Outdoor Recreation of the State of Colorado; Patrick Ahlstrom, Executive Director of the Department of Public Safety of the State of Colorado; Dr. A. Ray Chamberlain, Executive Director of the Department of Transportation of the State of Colorado.
Daniel E. Muse, City Attorney, Andrew L. Weber, Assistant City Attorney, Maria Kayser, Assistant City Attorney, Office of the City Attorney, Denver, for Defendants-Appellees The City and County of Denver, Colorado; Wellington Webb, Mayor of the City and County of Denver, Colorado; Bruce Alexander, Manager of the Department of Parks and Recreation of the City and County of Denver, Colorado; The Board of Parks and Recreation of the City and County of Denver, Colorado; Christine DeRose, President of the Board of Parks and Recreation of the City and County of Denver, Colorado; Beth McCann, Manager of the Department of Safety of the City and County of Denver, Colorado; Michael Musgrave, Manager of the Department of Public Works of the City and County of Denver, Colorado; Patricia Schwartzberg, Manager of the Department of Revenue of the City and County of Denver, Colorado; The City Council of the City and County of Denver, Colorado.
Kathryn L. Schroeder, County Attorney, L. Cary Unkelbach, Assistant County Attorney, John E. Bush, Jr., Assistant County Attorney, Littleton, for Defendants-Appellees The County of Arapahoe, Colorado; Jeannie Jolly, John Nicholl and Thomas Eggert, Arapahoe County Commissioners; Dorothy Vogt, Treasurer of the County of Arapahoe; and Patrick Sullivan, Sheriff of the County of Arapahoe.
Opinion by Judge DAVIDSON.
In this action for a permanent injunction, declaratory judgment, and damages for actions taken by state, City & County of Denver, and Arapahoe County officials (officials), The Freedom from Religion Foundation, Inc., and six individual plaintiffs appeal from a judgment of the trial court dismissing their complaint pursuant to C.R.C.P. 12(b). We affirm.
Plaintiffs' complaint arose from the Roman Catholic Pope's visit to Denver in August 1993 for World Youth Day (WYD). Plaintiffs allege that various actions of the officials, including authorizing holding religious services at a state park, temporary closure of the park to the public, and use of state funds to facilitate the visit constituted promotion of religion in violation of the First and Fourteenth Amendments and Colo. Const. art. II, § 4. After the event, plaintiffs sought injunctive relief and damages pursuant to 42 U.S.C. § 1983 (1988), and a declaratory judgment, pursuant to the Uniform Declaratory Judgments Act, § 13-51-101, et seq., C.R.S. (1987 Repl.Vol. 6A).
The officials filed a motion to dismiss under C.R.C.P. 12(b) for lack of subject matter jurisdiction, failure to join an indispensable party (the event organizer), and failure to state a claim upon which relief can be granted. The trial court granted the motion, determining, inter alia, that the request for injunctive relief was moot and that the officials had qualified immunity from suit. This appeal followed.

I.
Plaintiffs contend that their claims should not be dismissed as moot because their requests for relief are aimed at preventing similar conduct by government officials with regard to future religious functions. Plaintiffs argue that the officials' conduct in regard to WYD must be declared unlawful and future conduct enjoined because similar conduct is likely to recur and will escape review. We disagree.
Initially, we note that there is no contention that plaintiffs' claims for damages under 42 U.S.C. § 1983 are moot and only their claims for injunctive and declaratory relief are considered here. See Committee for First Amendment v. Campbell, 962 F.2d 1517 (10th Cir.1992) (dismissal of injunctive *88 relief claims for mootness did not warrant dismissal of damages claims).
Appellate courts will not generally render opinions on the merits of appeals when issues presented in litigation become moot because of subsequent events. A case is moot when a judgment would have no practical effect upon an existing controversy, American Drug Store, Inc. v. Denver, 831 P.2d 465 (Colo.1992), or would not put an end to any uncertainty. Crowe v. Wheeler, 165 Colo. 289, 439 P.2d 50 (1968) (action seeking declaratory judgment as to the qualification of voters for election that has already occurred).
Issues capable of repetition, yet evading review, may, however, be addressed on the merits when the case is otherwise moot. See Humphrey v. Southwestern Development Co., 734 P.2d 637 (Colo.1987).
An issue is capable of repetition, yet evades review when the "time required to complete the legal process will necessarily render each specific challenge moot." Rocky Mountain Ass'n of Credit Management v. District Court, 193 Colo. 344, 346, 565 P.2d 1345, 1346 (1977); see also Urevich v. Woodard, 667 P.2d 760 (Colo.1983) (declaratory judgment regarding election petitions appropriate when otherwise moot issue is capable of repetition yet would evade review). When the underlying substantive issue is capable of repetition but will evade review, it is not moot even though the chance of recurrence is remote. Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission, 620 P.2d 1051 (Colo.1980).
Here, plaintiffs seek a declaration "that the acts and practices [regarding WYD] complained of herein were unlawful." They also seek to enjoin defendants:
I. ... from authorizing or allowing public property to be used for conducting Roman Catholic Mass or any other formal religious ceremony;
II. ... from authorizing the use of public property for conducting confessions, baptisms, or other sacramental or religious activities;
III. ... from expending public funds to support the holding of any religious ceremony whether on public or private property;
IV. ... from expending public funds to promote religious activities of any kind;
V. ... from acting in concert with others to promote religion or religious activities; [and]
VI. ... from using public funds to make gifts to religious entities or persons....
First, to the extent that plaintiffs' claims for injunctive and declaratory relief specifically seek to redress allegedly unconstitutional actions taken by officials in conjunction with WYD eventsevents that have already occurredwe have little difficulty in concluding that these claims are moot.
When, as here, the conduct sought to be redressed by declaratory or injunctive relief is peculiar to a particular event that has already occurred, the occurrence of the event will moot the controversy. This is because neither a declaration or injunction as to these past events will have any practical legal effect on the dispute. See W-470 Concerned Citizens v. W-470 Highway Authority, 809 P.2d 1041 (Colo.App.1990). Also, plaintiffs here do not seek a declaration as to any general statute, ordinance, or regulation of the government entities that might be applied in future situations. Cf. Russell v. City of Central, 892 P.2d 432 (Colo.App.1995) (declaratory judgment not moot when validity of amendment of general application is challenged).
Furthermore, to the extent that similar conduct is capable of repetition, such conduct will not necessarily evade future review. If plaintiffs otherwise can demonstrate standing, then injunctive and declaratory relief can be sought with regard to such actions should government support for a religious event be proposed in the future, regardless whether it is of the magnitude of the WYD celebration.

II.
The trial court dismissed the remainder of plaintiffs' complaint, damages claimed under 42 U.S.C. § 1983 against representatives of city, county, and state government, on the *89 basis of qualified immunity. Plaintiffs contend that this was also error. We disagree.

A.
To state a claim for relief under § 1983, a complaint must allege that some person deprived plaintiffs of a right, privilege, or immunity established by the constitution or laws of the United States, and that in so doing, such person acted under color of state law. See County of Adams v. Hibbard, 918 P.2d 212 (Colo.1996).
Thus, as a threshold issue we note that while all public officials, sued in their personal capacities, are persons under § 1983, the governmental entities that are considered arms of the state, and officers of these entities, when sued for damages in their official capacity, are not persons for purposes of § 1983 claims. See Wigger v. McKee, 809 P.2d 999 (Colo.App.1990); see also Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).
On the other hand, local entities Arapahoe County and the City and County of Denveras well as their officers sued in their official capacity, are considered persons for purposes of § 1983 monetary claims. See Wigger v. McKee, supra; see also Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (local governments are persons under § 1983).
Thus, damages claims against the governor, attorney general, state treasurer, and directors of state agencies, boards, and departments, to the extent that they are sued in their official capacity, must be dismissed. Only monetary claims made against the city and county officers, sued in their official capacities, as well as claims against all of the officers in their personal capacities, can be maintained under § 1983.
Here, however, it is unclear from the description of each defendant in plaintiffs' complaint whether individual defendants are being sued for monetary damages in their official or personal capacities, or both. Nevertheless, from the nature of plaintiffs' claims for relief, we only can read the complaint as seeking damages against the various officers in their personal capacities.
The complaint requested that "each individual Defendant [pay] damages by reimbursing the public treasury for improper expenditures and use of manpower for which he or she was responsible" (emphasis added) If we assume reimbursement of a treasury is a valid claim for damages under § 1983, then any damages assessed against officers in their official capacity would necessarily be paid by the entity to the entity, rather than personally by the officers. See Wigger v. McKee, supra (suit against officer in official capacity is no different than suit against state itself); see Pennington v. Hobson, 719 F.Supp. 760 (S.D.Ind.1989) (damages in official capacities action recoverable against government entity rather than officials' personal assets); cf. Graham v. Sauk Prairie Police Commission, 915 F.2d 1085 (7th Cir.1990) (individual damages suit appropriate even though government may indemnify officers).
This, of course, would be a useless exercise. See Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (§ 1983 damage awards intended to compensate for past abuses and deter future constitutional deprivations); Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (damages only appropriate when they effectuate the policies underlying § 1983).
Consequently, because plaintiffs' damages claims are meaningless unless pursued against the individual defendants personally, we view them as claims against the officials in their individual capacity. See County of Adams v. Hibbard, supra; Millenson v. Department of Highways, 41 Colo.App. 460, 590 P.2d 979 (1978) (parties are responsible for posture in which they place themselves).

B.
In § 1983 actions, government officials sued in their individual capacity, and performing discretionary, non-ministerial functions, are qualifiedly immune from liability for damages insofar as their conduct does not violate clearly established statutory or *90 constitutional rights of which a reasonable person would have known. City of Lakewood v. Brace, 919 P.2d 231 (Colo.1996); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Conde v. State Department of Personnel, 872 P.2d 1381 (Colo.App.1994).
Such entitlement to immunity is immunity from suit, rather than a mere defense to liability. See Moody v. Ungerer, 885 P.2d 200 (Colo.1994).
Plaintiffs argue that, in dismissing their claims on the basis of qualified immunity, the court failed to accept the allegations of their complaint as true and to construe it in a manner most favorable to them. Specifically, they assert that the court improperly assumed that the officials were performing discretionary and not ministerial acts, and incorrectly decided that a reasonable person would not have known that constitutional rights were clearly being violated. We disagree.
The ministerial act exception to qualified immunity is quite narrow. See Sellers v. Baer, 28 F.3d 895 (8th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995); Foster v. McGrail, 844 F.Supp. 16 (D.Mass.1994) (discretionary function is broad enough to include not only high-level decision makers, but also lower level officials who have some discretion in enforcing policy).
For qualified immunity purposes, a duty is "ministerial" only if a statute or regulation leaves no room for discretion that is, it "specif[ies] the precise action that the official must take in each instance." Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (fn.14). Further, the exception applies only if the claim arises from the violation of the specific rule. See Gagne v. City of Galveston, 805 F.2d 558 (5th Cir.1986), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).
Here, plaintiffs made no allegation that the officers were performing ministerial rather than discretionary functions, or that they were required by law to perform the offending acts. See Henderson v. Romer, 910 P.2d 48 (Colo.App.1995) (cert. granted February 20, 1996) (while the material allegations in the complaint are deemed admitted in evaluating a motion to dismiss, plaintiff must still plead facts demonstrating the basic elements of their claim).
More importantly, it is clear from plaintiffs' descriptions of the defendants in their complaint that all of the defendants are high-ranking officials with significant discretionary authority with regard to WYD events. See Howard v. Adkison, 887 F.2d 134 (8th Cir.1989) (discretionary acts involve significant decision-making that entails personal deliberation, decision, and judgment); see also Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
Secondly, plaintiffs' complaint must adequately allege a violation of clearly established law and plead facts which, if true, describe a violation of that law. Conde v. State Department of Personnel, supra. To defeat an assertion of qualified immunity, the unlawfulness of the conduct is objectively determined and must be apparent in light of pre-existing law. City of Lakewood v. Brace, supra; National Camera, Inc. v. Sanchez, 832 P.2d 960 (Colo.App.1991); see also Anderson v. Creighton, supra, 483 U.S. at 640, 107 S.Ct. at 3038, 97 L.Ed.2d at 531 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278 (1986) (the objective reasonableness standard "provides ample protection to all but the plainly incompetent or those who knowingly violate the law").
What is "clearly established law" is a question of law, and a court engaging in review of a qualified immunity determination should therefore use "its full knowledge of its own [and other relevant] precedents." See Moody v. Ungerer, 885 P.2d 200 (Colo.1994) (fn.2).
In determining the applicability of qualified immunity, the court need not decide whether specific actions of the officials were unconstitutional, but merely whether the conduct was so clearly unconstitutional that any *91 reasonable person would have known that his or her actions violated plaintiffs' constitutional rights. See National Camera, Inc. v. Sanchez, supra.
Here, and contrary to plaintiffs' arguments, decisions from various jurisdictions indicate that the officials' actions were not such that they violated clear constitutional prohibitions. In fact, it appears to be clearly established that police, sanitation, and related public services, such as performed by defendants to support WYD participants' rights to free speech or free exercise of religion, are legitimate functions of government specifically in accord with constitutional law and not an establishment of religion. See O'Hair v. Andrus, 613 F.2d 931 (D.C.Cir. 1979), (papal mass on National Mall not violation of Establishment Clause); See Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (public university cannot deny religious groups access to facilities used by non-religious groups); Fowler v. State of Rhode Island, 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953) (use of public parks for religious purposes permitted if equally available to all religious groups); cf. Country Hills Christian Church v. Unified School District, 560 F.Supp. 1207 (D.Kan.1983) (religious worship is form of speech; once forum is opened to assembly or speech, school district cannot prohibit other groups on the basis of content).
Accordingly, under the doctrine of qualified immunity, the remaining claims against defendants were properly dismissed.
Finally, because all of plaintiffs' claims were properly dismissed on the basis of immunity or mootness, we need not address their other contentions.
The judgment is affirmed.
BRIGGS and TAUBMAN, JJ., concur.