**CAPITRAN INC., a Washington corporation, Plaintiff–Appellant,**

v.

**GREAT WESTERN BANK, a Federal Savings Bank, Defendant–Appellee and Cross–Appellant,**

and

**Leonard H. Gross, Defendant and Cross–Appellee.**

No. 92CA1943.

Colorado Court of Appeals, Div. III.

Feb. 10, 1994.

Rehearing Denied March 24, 1994.

Lohf, Shaiman & Jacobs, P.C., J. Michael Morgan, Don D. Jacobson, Denver, for plaintiff-appellant.

Plaut & Lipstein, P.C., Evan S. Lipstein, Lakewood, for defendant-appellee and cross-appellant.

Phillip E. Lyle, James S. Macdonald, Denver, for defendant and cross-appellee.

Opinion by Judge DAVIDSON.

In this action to recover funds pursuant to a security agreement, plaintiff, Capitran, Inc., appeals from the summary judgment entered in favor of defendant, Great Western Bank. Great Western Bank cross-appeals from the summary judgment entered in favor of defendant, Leonard H. Gross. We affirm.

Randerson, Inc., an Indiana corporation, owned and operated a campground in Florida to which it sold memberships under written contracts. The contracts provided for the sale of an initial membership and for the remittance of annual membership dues, also referred to as maintenance fees.

In 1986, Randerson executed a promissory note in favor of Great Western Bank. This note was secured by membership contract payment receivables, acquired in conjunction with financing of campground membership purchases, and membership dues receivables. Great Western Bank filed a financing statement, which was renewed in 1990, with the Florida Secretary of State. Randerson then entered into an agreement with Business Dimensions, Inc., to collect these receivables through a lock-box in Lakewood, Colorado.

Randerson executed two promissory notes to Capitran in 1990. These notes were secured by membership dues receivables. Capitran filed a financing statement with the Colorado Secretary of State.

Randerson defaulted on the Great Western Bank and Capitran notes. Great Western Bank filed an action in Florida to foreclose on its security interest. This action was ultimately resolved by settlement and entry of a consent judgment.

Capitran attempted to foreclose in Colorado on its security interest in the membership dues receivables; however, Business Dimen-

sions declined to convey any funds to Capitran because of the competing security interest held by Great Western Bank.

Capitran filed suit against Business Dimensions for recovery of the funds in which it claimed a security interest. Great Western Bank intervened, claiming its security interest in the funds had priority over that of Capitran. Leonard H. Gross also intervened, claiming an interest in a portion of these funds.

The trial court granted summary judgment in favor of Great Western Bank on the basis that it had a perfected security interest in the membership dues accounts receivables by virtue of the filing in Florida, the debtor's location. The trial court found that Capitran had not perfected its security interest in the funds because it had not filed in the correct state.

The trial court also granted summary judgment in favor of Gross, finding that Gross was the owner of 40% of the membership dues receivables because the right to payment of those receivables had never been owned by Randerson and therefore could not have been pledged to Great Western Bank.

I.

Capitran argues that the trial court erred by determining that Great Western Bank held an unsubordinated, first priority, perfected security interest in the membership dues receivables. We do not agree.

A.

Capitran contends that because the funds are proceeds of instruments held by a bailee, Business Dimensions, by giving notice to the bailee it properly perfected its security interest. It is Great Western Bank, according to Capitran, which failed properly to perfect its security interest, and therefore, the earlier filing in Florida is of no effect. We disagree.

Under the Colorado version of the Uniform Commercial Code (U.C.C.), "instrument" is defined as "a negotiable instrument ... or a certified security ... or any other writing which evidences a right to the pay-

ment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." Section 4–9–105(1)(i), C.R.S. (1992 Repl.Vol. 2). "Account" is defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." Section 4–9–106, C.R.S. (1992 Repl. Vol. 2).

We agree with Capitran that a writing here, captioned "Vacation Membership Contract," embodies an obligation on the part of the purchaser to pay an annual "maintenance fee." We do not agree, however, that this writing is an instrument, as that term is used in the U.C.C.

The Vacation Membership Contract contains three parts. Part A is a sales contract for the membership itself. Part B is subcaptioned "Payment Terms" and recounts the applicable financing terms and conditions and specifies an additional amount as an "annual maintenance fee." Part C is a promissory note presumably used when the buyer chose to finance the membership purchase.

Part A does not mention, and therefore cannot evidence, an obligation to pay maintenance fees or membership dues. This part also purports to create a security interest in the membership being purchased if such purchase is financed. Thus, Part A cannot be an "instrument."

Part B specifies the amount of the annual maintenance fee and Part C refers to a right of acceleration "upon default in the payment when due of any such installment of principal and interest, or of the maintenance fee required by the membership contract." Therefore, these parts do evidence a right to payment of the maintenance fee. The nature of the obligation to pay the maintenance fee, however, implies future performance on the part of the seller. Thus, neither part is a writing which in the ordinary course of business would be transferable upon delivery plus indorsement or assignment. *See In re Holiday Interval, Inc.*, 94 B.R. 594 (Bankr. W.D.Mo.1988); § 4–9–105, C.R.S. (1992 Repl. Vol. 2).

"Maintain" means: "acts of repairs and other acts to prevent a decline, lapse or cessation from existing state or condition; keep in force; keep in good order; keep in proper condition; keep in repair; keep up; preserve." *Black's Law Dictionary* 859 (5th Ed.1979). Thus, implicit in the term "maintenance" is a future obligation on the part of the seller, here Randerson, as owner and operator of the campground, to preserve the campground and keep it in good repair. Although the right to receive payment of the membership dues may be assigned to a third party, this obligation to maintain the campground is logically performable only by the owner/operator of the campground, or by its agent for that purpose, and therefore, the contract is not transferrable in its entirety upon delivery.

These funds are also referred to by the parties as "membership dues." The term "dues," as "applied to clubs and other membership organizations, refers to sums paid toward support and maintenance of same and as a requisite to retain membership." *Black's Law Dictionary* 450 (5th Ed.1979). The term "membership dues" also implies continuing obligations on the part of the seller to maintain and support the campground organization.

Because of the continuing nature of the obligations implicit in the right to collect "maintenance fees" or "membership dues," we conclude that none of the three parts of the Vacation Membership Contract, separately or together, constitutes an "instrument" under the Colorado Uniform Commercial Code.

Instead, the Vacation Membership Contract creates, at best, a bilateral executory contract requiring future performances by both parties. "A seller's interest in such contract is not ordinarily transferred because the transferee is not in a position to perform the obligations under [a] bilateral contract...." *In re Holiday Interval, Inc., supra*, 94 B.R. at 601. In other words, the collateral at issue here is a right to payment for services rendered; it is an "ordinary commercial account receivable." *See* § 4–9–

106, C.R.S. (1992 Repl.Vol. 2) (Official Comment).

We note that, although Capitran argues now that its security interest is in "instruments" or "proceeds of instruments," until litigation commenced it consistently treated the collateral as "accounts." The security agreement entered into between Capitran and Randerson is denominated "Security Agreement—Specific Accounts Receivable." The agreement refers to the collateral throughout as "accounts, or proceeds thereof," and imposes upon Randerson the duty of performance of "all its obligations ... arising from the transaction which created any assigned account." And, Capitran filed a financing statement, albeit in the wrong state, thus proceeding as if the collateral was accounts and not instruments.

According to § 4–9–103(3)(b), C.R.S. (1992 Repl.Vol. 2), if the security interest is in accounts, the law of "the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest." According to § 4–9–103(3)(d), C.R.S. (1992 Repl.Vol. 2): "[A] debtor shall be deemed located at his place of business. ..."

Here, it is undisputed that the debtor, Randerson, is located at its place of business in Florida. Thus, Florida was the proper jurisdiction in which to file in order to perfect a security interest in the collateral; the "location" of the collateral in Colorado is irrelevant. *See* Fla.Stat.Ann. § 679.103 (West 1990) (Official Comment 5).

It is also undisputed that Great Western Bank filed a financing statement with the Florida Secretary of State pursuant to Fla. Stat.Ann. §§ 679.401 and 679.402 (West 1990). Therefore, we agree with the trial court that Great Western Bank had a properly perfected security interest in the membership dues receivables collected by Business Dimensions, Inc., which took priority over Capitran's unperfected security interest pursuant to Fla.Stat.Ann. § 679.312(5)(a) (West 1990).

## B.

■ Capitran also argues that, even if Great Western Bank held a first priority security interest in the membership dues receivables, it is barred from asserting that priority here. Specifically, Capitran contends that Great Western Bank agreed to subordinate that interest in the consent judgment entered in the Florida foreclosure proceedings. We do not agree.

The judgment, as originally entered by the Florida court read in part:

The receivables acquired by defendant Randerson in conjunction with its provision of financing for campground membership purchasers have been referred to by the parties as the Randerson Holiday Village Campground Membership Receivables, which term shall not be deemed to include or refer to any annual membership and/or maintenance dues payable under these membership agreements. Great Western has a first priority perfected security interest in the Randerson Holiday Village Campground Membership Receivables, except and to the extent that any such receivables were pledged or hypothecated to third parties before April 23, 1991.

Shortly after the entry of judgment, upon the insistence of counsel for Randerson, a stipulation to modify the judgment was filed to remove the phrase "which term shall not be deemed to include or refer to any annual membership and/or maintenance dues payable under these membership agreements."

Capitran argues that this modification changes the meaning of "Randerson Holiday Village Campground Membership Receivables," as defined in the underlying settlement agreement, so as to include membership dues receivables, the effect of which would be to subordinate Great Western Bank's otherwise first priority interest in those receivables to the interest held by Capitran. However, in our view, the meaning of the deleted phrase was established by its use in the underlying settlement agreement, and thus, its deletion did not have the effect urged by Capitran.

■ The determination whether a term of an agreement is ambiguous is a question of law. *Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984);

*Friedman & Son, Inc. v. Safeway Stores, Inc.,* 712 P.2d 1128 (Colo.App.1985). If no ambiguity exists, no extrinsic evidence is necessary to prove the intent of the parties. *See McNichols v. City & County of Denver,* 120 Colo. 380, 209 P.2d 910 (1949).

■ When the evidence of the agreement consists of documents, as here, the determination of their effect is a matter of law. *Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748 (1978).

The definitions contained in the consent decree and the underlying settlement agreement are not ambiguous. The receivables acquired by Randerson in conjunction with its provision of financing for campground membership purchasers are referred to consistently by the parties as "Randerson Holiday Village Campground Membership Receivables." Similarly, the interest of a third party, GEICO Financial Services, Inc., which had purchased membership contracts from Randerson in which GEICO claimed a first priority security interest, was referred to by the parties as "GEICO Holiday Campground Membership Receivables." This is in contrast to the term "membership dues receivables," also used consistently by the parties. We note that GEICO specifically and separately disclaimed any interest in any "membership dues receivables."

The underlying settlement document distinguishes, by its plain terms, "Randerson Holiday Village Campground Membership Receivables" from "GEICO Holiday Campground Membership Receivables" and both from the phrase "membership dues receivables." According to the settlement agreement;

[T]he parties specifically agree that Great Western [Bank] has a first priority perfected security interest in the annual membership (maintenance) fees (hereinafter sometimes referred to as Membership Dues Receivables) paid or to be paid by all current and any future members of the Campground, whether said members originally purchased their memberships from Randerson (Randerson Members) or whether said current or future members acquired their initial membership interest

in a different campground and were subsequently transferred to the Campground (Transferred Members). Additionally, the parties agree that Great Western has a first priority perfected security interest in the Randerson Holiday Village Campground Membership Receivables, as defined above, except and to the extent the subject receivables have heretofore been pledged or hypothecated to a third party(ies). Additionally, the parties hereto agree that Great Western has a perfected second priority security interest in the GEICO Holiday Village Campground Membership Receivables....

. . . .

The parties further agree that GEICO has a first priority perfected security interest in the GEICO Holiday Village Campground Membership Receivables.... GEICO acknowledges that it has no security interest in the annual membership (maintenance) fees (Membership Dues Receivables)....

Thus, with or without the eliminated phrase, the term "Randerson Holiday Village Campground Membership Receivables" referred only to the receivables acquired by Randerson in conjunction with its financing of campground membership purchases, and not to receivables of membership dues or maintenance fees. Great Western Bank had an unsubordinated, first priority, perfected security interest in all membership dues receivables, and the separately defined "Randerson Holiday Village Campground Membership Receivables" were the only receivables in which Great Western Bank intended to subordinate its interest. The subsequent elimination of the limiting language in the consent judgment does not change the definitions or the plain language of the settlement agreement.

II.

Great Western Bank argues that the trial court erred in entering summary judgment in favor of Gross because Gross did not support his motion with competent evidence. We disagree.

■ Gross claimed that, prior to the assignment of the membership dues receivables, an entity known as Tropical Associates, Inc., transferred certain campground memberships to Randerson but reserved to itself 40% of the membership dues thereunder for the years 1988, 1989, 1990, and 1991, and that it subsequently assigned all rights to those dues to Gross. On the grounds that Great Western Bank's security interest could not attach to those membership dues receivables in which Randerson had no rights to payment, Gross filed a motion for summary judgment which was granted by the trial court.

Great Western Bank contends that Gross failed to provide competent evidence to support his motion because his affidavit and the affidavit of an employee of Business Dimensions were not based on personal knowledge of the written agreements which formed the foundation of his claim and because Gross failed to submit those written agreements contemporaneously with his motion.

Gross, however, had previously submitted copies of the agreements with his cross-claim. These documents were already part of the pleadings before the trial court, and, inasmuch as the trial court, in a case management order, had limited the size of any subsequent briefs to no more than five pages, including attachments or exhibits, they could properly be considered. *See* C.R.C.P. 56(c).

Great Western Bank did not, and does not now, contest the authenticity or import of these documents. Therefore, in the absence of contravening evidence, the trial could properly rely upon them. *See Sullivan v. Davis,* 172 Colo. 490, 474 P.2d 218 (1970).

■ As for the affidavits, "[t]he threshold for satisfying the personal knowledge requirement is not very high"; as long as the court has before it some evidence that the witness has personal knowledge of the event, the evidence is competent. *Burlington Northern R.R. Co. v. Hood,* 802 P.2d 458, 469 (Colo.1990).

Gross was a party to several of the agreements and a successor in interest to a party to the other agreements. He thus claimed a basis for personal knowledge of the agreements and their contents. The affidavit of the Business Dimensions employee indicated that he was familiar with disbursements of the funds collected pursuant to those agreements; thus, he also claimed a basis for personal knowledge of the agreements. Neither affidavit was submitted upon "information and belief."

Great Western Bank's objections to the accuracy of the affiant's interpretations of the agreements relate to weight and credibility, rather than to admissibility. *See People in Interest of J.E.B.,* 854 P.2d 1372 (Colo. App.1993); *Metro National Bank v. Parker,* 773 P.2d 633 (Colo.App.1989).

■ In ruling on a motion for summary judgment, the trial court's function is to determine whether any material facts are disputed, not to assess the credibility or weight of the evidence. *Crouse v. City of Colorado Springs,* 766 P.2d 655 (Colo.1988). Thus, it was incumbent upon Great Western Bank, as the party opposing the summary judgment motion, to submit evidence demonstrating a genuine factual dispute as to the matters asserted in the affidavits. *See Sullivan v. Davis, supra* (party opposing summary judgment may not rely upon mere allegations or denials). This it failed to do.

Hence, once the trial court determined that the portion of the funds at issue was not owned by Randerson at the time the security interest was granted, there were no issues of fact left to be resolved.

■ Under the Florida Uniform Commercial Code, no security interest may attach unless and until the debtor has rights in the collateral. Fla.Stat.Ann. § 679.203(1)(c) (West 1990); *Hartzog v. Dixon,* 366 So.2d 848 (Fla.App.1979); *see also Weld Colorado Bank v. E & E Construction, Inc.,* 653 P.2d 758 (Colo.App.1982) (Under sections substantially identical to the Florida Uniform Commercial Code, no security interest can attach to accounts receivable if the debtor does not have a right to payment).

Thus, Gross was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in his favor. *See Ellerman v. Kite,* 625 P.2d 1006 (Colo. 1981).

In light of our resolution of these issues, we need not address Capitran's contention regarding the applicability of the doctrine of collateral estoppel.

The judgment is affirmed.

CRISWELL and TAUBMAN, JJ., concur.