Argued and submitted January 31, affirmed May 25, petition for review denied September 15, 2011 (350 Or 716)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAISON DOUGLAS ANDERSON,
*Defendant-Appellant.*

Tillamook County Circuit Court
061309; A143540

258 P3d 1244

Bear Wilner-Nugent argued the cause and filed the brief for appellant.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant, who was convicted of third-degree rape, ORS 163.355, appeals a judgment revoking his probation. When defendant was originally sentenced to probation, his criminal history score included an assault conviction. While he was serving probation, this court reversed his assault conviction. Subsequently, defendant violated the conditions of his probation. Defendant argues that the sentencing court erred in failing to recalculate his criminal history score when the court revoked his probation, and it thereby imposed a sanction that was improper under the sentencing guidelines and in violation of his federal due process rights. We review defendant's sentence for errors of law. ORS 138.222(4). As explained below, upon revocation of defendant's probation, the sentencing court was limited to imposing a sanction based on defendant's criminal history score determined at the time of the original sentencing. Accordingly, we affirm.

In 2005, defendant was convicted of assault, and he timely appealed. In 2007—while his appeal from the assault conviction was pending in this court—defendant was charged with third-degree rape, third-degree sodomy, and furnishing alcohol to a minor. Defendant agreed to plead guilty to rape, and, in exchange, the state agreed to drop the sodomy and furnishing alcohol charges. Defendant's plea petition provided, in part, with handwritten material indicated by italics and printed blank lines indicated by underscoring:

"5.  I know I have the following rights at trial: * * * (7) to require the district attorney to prove * * * all sentence enhancement facts to a jury or court beyond a reasonable doubt.

"6.  I understand that I give up all of the rights listed in paragraph #5 above when I plead either 'Guilty' or 'No Contest.' * * *.

"* * * * *

"8.  I want to plead:

"[X] Guilty [ ] No Contest

"Count # *1*: *Rape 3*, [ ] Violation/[ ] Misdemeanor/[X] Felony, Grid Block: *6-D*, Presumptive Sentence: *13-14 mos*,

Post-Prison Supervision: *24 mos*, Maximum Sentence: *5 years*, Maximum Fine: *$125K*, Minimum Sentence: *Prob.*, Mandatory Fine: *$500*.

"* * * * *

"9.  I agree that my criminal history is accurately reflected on the attached sheet provided by the district attorney. I have noted any convictions with which I disagree on that form. I understand that the judge may use this information to determine and/or enhance my sentence.

"* * * * *

"15.  [X] I understand that the district attorney agrees to make the following recommendation to the court about my sentence and/or other pending charges: *See Attached. Parties Stipulate to downward dispo departure & upward durational departure*. * * *.

"* * * * *

"20.  APPEAL RIGHTS: Unless this is a conditional plea, I understand the right to appeal my conviction is limited and that I may appeal only if I can make a colorable showing that the sentence exceeds the maximum allowed by law or is unconstitutionally cruel and unusual. * * *.

"* * * * *

"22.  I am signing this plea petition and entering this plea voluntarily, intelligently, and knowingly with full understanding of all matters set forth in the charging instrument and in this petition."

The court accepted the plea and, based in part on defendant's criminal history, including his then-existing assault conviction, classified defendant under grid block 6D for sentencing. That grid block carries a presumptive sentence 13 to 14 months' incarceration followed by 24 months' post-prison supervision. Consistently with the terms of the plea, however, the court imposed a downward dispositional departure and upward durational departure sentence of 60 months' probation. The judgment stated that defendant is subject to all general conditions of probation under ORS 137.540, which, among other things, describes the possible effects of failing to abide by the conditions of probation,

including revocation of probation. Defendant did not appeal his sentence on the rape conviction.

In 2008, this court reversed defendant's assault conviction. *State v. Anderson*, 221 Or App 193, 195, 189 P3d 28 (2008). Defendant then violated a term of his probation by failing to attend a sex offender program and the court revoked defendant's probation in 2009. At the probation revocation proceeding, defendant contended that the court should recalculate the grid block used for sentencing on the rape conviction because, with his assault conviction overturned, his criminal history score should place him in grid block 6G. That grid block carries a presumptive probationary sentence that permits a probation violation sanction of only six months' incarceration. *See* OAR 213-010-0002(1). The sentencing court determined that its ability to modify the grid block applicable to defendant at a probation revocation proceeding was limited by OAR 213-010-0002(2), and it sanctioned him to 13 months' incarceration, in accordance with the term of incarceration provided for in grid block 6D.

On appeal, defendant first argues that the sentencing court misread how the sentencing guidelines instruct courts to calculate criminal history and that it should have recalculated the grid block based on his criminal history at the time of the probation revocation. The state contends that under the sentencing guidelines, the sanction upon probation revocation is based on the grid block at the time of the original sentencing. At the time the court sentenced defendant to probation in 2006, defendant was in grid block 6D; therefore, the state asserts, the trial court sanctioned defendant with a prison term of the proper duration. We agree with the state and accordingly affirm.

If a defendant fails to comply with the conditions of probation, a court may revoke probation and impose sanctions provided by the Oregon Criminal Justice Commission. ORS 137.545(5)(b). The Oregon Criminal Justice Commission promulgated rules and sentencing guidelines in chapter 213 of the Oregon Administrative Rules. Pertinent in this case, OAR 213-010-0002(2) applies to probation revocations and provides, in part:

"For those offenders whose probationary sentence was
* * * a departure from a presumptive prison sentence
* * * the sentence upon revocation shall be a prison term up
to the maximum presumptive prison term which could have
been imposed initially * * *."

In other words, "once a probationary sentence is executed,
'OAR 213-010-0002 limits the revocation sanctions to those
that *flow from the gridblock used at the time of sentencing.*'"
*State v. Bolf*, 217 Or App 606, 609, 176 P3d 1287 (2008) (quot-
ing *State v. Hoffmeister*, 164 Or App 192, 196, 990 P2d 910
(1999)) (emphasis added).

Here, the original sentencing court placed defendant
in grid block 6D based on his plea petition. The court found
reasons for departing from the presumptive 13- to 14-month
prison sentence, and defendant received a probationary sen-
tence. Pursuant to OAR 213-010-0002 and *Bolf*, when the
sentencing court revoked defendant's probation, the court
could only impose a sanction that it could have imposed as a
sentence initially using grid block 6D. Therefore, the court
did not err when it sanctioned defendant to 13 months' incar-
ceration when it revoked his probation.

In *Bolf*, the defendant's actual criminal history at
the time of sentencing was such that the defendant's grid
block was 6C, but the parties stipulated, and the judgment
stated, that the defendant would be sentenced to probation
under grid block 6F. 217 Or App at 608. When the defendant
later violated her probation, the trial court revoked her pro-
bation and imposed a revocation sentence based on the defen-
dant's true grid block, 6C. *Id.* On appeal, we reversed and
explained that, "because the judgment states that defen-
dant's grid block was 6F, that determination defines and con-
strains the sanctions available upon revocation." *Id.* at 609.
Defendant contends that *Bolf* is not controlling because,
unlike in *Bolf*, he did not stipulate to a fictional grid block,
but rather stipulated to a probationary sentence. Defendant's
attempt to distinguish *Bolf* fails for two reasons. First, the
parties did agree to a grid block. The trial court's finding that
the "parties stipulated to a sentence outside the presumptive
sentence range for the stipulated gridblock classification" is
supported by the record. Second, in any event, *Bolf*'s holding

does not depend on whether the parties stipulated to a grid block. *Bolf* stands for the rule that what constrains the court during a probation revocation is the grid block in the judgment, whether stipulated to or not, at the time of the original sentencing.

Defendant also contends that his probation revocation hearing should have been treated as a resentencing hearing at which the sentencing court is permitted to recalculate the criminal history score in accordance with OAR 213-004-0006(2) and *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993). The sentencing guideline on which defendant relies states, in relevant part:

> "An offender's criminal history is based upon the number of adult felony [convictions] * * * in the offender's criminal history *at the time the current crime or crimes of conviction are sentenced.*"

OAR 213-004-0006(2) (emphasis added). Defendant's argument, though, rests on the incorrect assumption that a defendant who is sanctioned when his probation is revoked is being "sentenced" for a conviction of a crime as that term is used in OAR 213-004-0006(2).

We recently explained the difference between a sentencing proceeding and a probation revocation proceeding:

> "The question is whether imposing sanctions upon revocation of probation is 'sentencing' within the meaning of that statute. The relevant statutes appear to draw a distinction between sentencing and the imposition of probation revocation sanctions. ORS 137.120(2), for example, refers to sentencing as occurring after a person 'is convicted,' while, in contrast, ORS 137.545(5)(b) provides that the court that imposed a probationary sentence 'may revoke probation supervision and *impose a sanction* as provided by the rules of the Oregon Criminal Justice Commission.' "

*State v. Newell*, 238 Or App 385, 392, 242 P3d 709 (2010) (emphasis in original). Thus, OAR 213-004-0006 does not allow a sentencing court during a revocation proceeding to recalculate a defendant's criminal history score. Instead, OAR 213-010-0002, which governs probation revocation sanctions, applies. As we held in *Bolf*, during a probation revocation proceeding, the sentencing court is to impose the

sanction based on the grid block at the time of the initial sentence. 217 Or App at 609. The sentencing court correctly applied the sentencing guidelines to defendant.

We understand defendant's last assertion to be that OAR 213-010-0002 is unconstitutional as applied to him. Defendant invokes the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the state by virtue of the Fourteenth Amendment Due Process Clause. He argues that the court improperly used the assault conviction against him when applying his criminal history score from the original sentencing to determine his probation revocation sanction pursuant to OAR 213-010-0002. He contends that the court could only take his acquitted conduct into account at that point if the state proved that he was culpable of that conduct by a preponderance of the evidence. *See United States v. Watts*, 519 US 148, 117 S Ct 633, 136 L Ed 2d 554 (1997) (under United States Sentencing Guidelines, district court could take acquitted conduct into account upon proof defendant was culpable of that conduct by a preponderance of the evidence). The state counters that the trial court did not take defendant's assault conviction into account at all in determining the revocation sanction; rather, the court merely looked to the plea agreement and held defendant to the sanction that he had agreed would be imposed if he violated the terms of his probation sentence. We agree that, by entering into the plea agreement, defendant relinquished any objection he had based on the guarantee against double jeopardy.

Defendant was fully aware that the appeal of his assault charge was pending in this court at the time he entered the plea agreement. In exchange for defendant's guilty plea on the rape charge, the state dismissed two other charges and defendant received the benefit of a downward dispositional departure. As we noted above, the parties stipulated that defendant's grid block was "*6-D*, Presumptive Sentence: *13-14 mos*[.]" Defendant gave up his right to dispute his prior criminal history when he pleaded guilty. Defendant also knew that he would be subject to sanctions, including the term of imprisonment he ultimately received as a sanction, if he violated the terms of his probation sentence. Defendant entered into the plea agreement knowingly and

voluntarily. Having entered into the stipulated agreement under these circumstances, defendant relinquished any double jeopardy objection he may have had. *See United States v. Broce*, 488 US 563, 573, 109 S Ct 757, 102 L Ed 2d 927 (1989) (defendants gave up double jeopardy defense by guilty plea even though their counsel had not discussed and they had not focused on possibility of defense when plea was entered); *see also State v. Young*, 188 Or App 247, 252 n 5, 71 P3d 119, *rev den*, 336 Or 125 (2003) ("defendant waived any double jeopardy objection [under Article I, section 12 of the Oregon Constitution] to the imposition of multiple sentences when he entered into the plea agreement").

Affirmed.