2012 COA 196M

**HEALTH GRADES, INC., a Colorado Corporation, Plaintiff–Appellant and Cross–Appellee,**

**v.**

**Christopher BOYER and Patrick Singson, Defendants–Appellees and Cross–Appellants.**

**No. 11CA1829.**

Colorado Court of Appeals, Div. III.

Nov. 8, 2012.

As Modified on Denial of Rehearing Jan. 31, 2013.

Rothgerber Johnson & Lyons LLP, Kris J. Kostolansky, Susan S. Sperber, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

The Law Office of Paul Maxon, P.C., Paul Maxon, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge RICHMAN.

¶ 1 Plaintiff, Health Grades, Inc., appeals the trial court's judgment following a jury verdict in favor of defendants, Christopher Boyer and Patrick Singson, on their abuse of process counterclaim. We reverse the judgment and remand the case with directions. Although defendants filed a notice of cross-appeal, they did not brief the issues on which it was based. Accordingly, we do not address defendants' cross-appeal.

## I. Background

¶ 2 The facts pertinent to this appeal are not in dispute. Health Grades is a web-based information resource that provides healthcare information and provider ratings online. Defendants are former Health Grades employees who resigned over a dispute as to whether websites they created improperly competed with Health Grades' business.

¶ 3 Health Grades filed suit against defendants, asserting five claims for relief: breach of duty of loyalty, misappropriation of trade secrets, interference with prospective business advantage, conversion, and breach of contract. In the same lawsuit, defendants asserted a counterclaim for abuse of process based on the theory that Health Grades' claims against them amounted to "sham litigation," and defendant Singson individually

asserted a counterclaim for tortious interference with contract, alleging that his employment was affected by a letter Health Grades sent to a potential employer.

¶ 4 Before trial, defendants moved for summary judgment on all of Health Grades' claims, and Health Grades moved for summary judgment on all of defendants' counterclaims. Health Grades argued that there were no genuine issues of material fact, that its complaint was not a sham, and that defendant Singson's employment was not affected by the letter it had sent. Defendant Singson agreed to dismiss the tortious interference counterclaim.

¶ 5 In one written order, the trial court denied both motions for summary judgment. The court found that "genuine issues of material fact do exist with respect to defendants' abuse of process counterclaim." The court noted that to prove abuse of process, a party need not show that it was successful in the proceedings where a legal process was abused. Thus, it denied Health Grades' motion for summary judgment on the abuse of process counterclaim.

¶ 6 With respect to defendants' motion for summary judgment, Health Grades argued that there were genuine issues of material fact as to each claim, and the court "agree[d] with respect to each of Health Grades' claims." Thus, it concluded that defendants were not entitled to summary judgment.

¶ 7 The case proceeded to trial before a jury. At the close of evidence, defendants moved for a directed verdict on Health Grades' four tort claims based on the economic loss doctrine. They argued that the doctrine barred the tort claims because Health Grades had failed to show that defendants owed a duty to Health Grades independent of their contractual obligations as employees. Defendants did not argue for a directed verdict as to the contract claim, nor did they specifically argue that there was insufficient evidence to support *any* of the five claims.

¶ 8 The court denied the motion as to the breach of fiduciary duty claim, stating, "I think that's an independent duty for which, viewing the evidence in the light most favorable to Plaintiff, the jury could find that the Defendants have breached their fiduciary duty of loyalty." It also denied the motion as to the misappropriation of trade secrets claim, noting that it was a statutory claim that imposed a "different duty." At that time, the court reserved ruling on the conversion claim, which was ultimately submitted to the jury, and the tortious interference claim, which Health Grades withdrew before the case was submitted to the jury.

¶ 9 Thereafter, Health Grades moved for a directed verdict on defendants' abuse of process counterclaim, arguing that defendants failed to show that its claims were "devoid of reasonable, factual support or lacked any basis in law" and therefore did not constitute "sham litigation," a showing that is required by the First Amendment when an abuse of process claim is based on the filing of a lawsuit. Defendants responded that there was disputed evidence regarding whether there was "actual competition" by defendants, whether defendants' websites had identical technical features, and whether defendants' activities had any impact on Health Grades' revenues.

¶ 10 The court cut off defendants' argument and denied the motion, stating, "I believe that when viewing the evidence in the light most favorable to Defendants on their counterclaim that there is evidence sufficient that the jury could find for the Defendants."

¶ 11 The jury was instructed on the four claims submitted by Health Grades. It was also instructed that if it found in favor of Health Grades on any of those claims, it must find against defendants on their abuse of process counterclaim, which was submitted to the jury on separate verdict forms for each defendant.

¶ 12 The jury was further instructed that to find for defendants on their counterclaim, it must find, by a preponderance of the evidence, that

1. Health Grades intentionally filed the claims consisting this lawsuit; and

2. The principal reason for Health Grades' filing of its claims was not for the proper legal purpose that such process is used, in that Health Grades' claims were

devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law; and

3. Health Grades' actions caused Mr. Boyer and Mr. Singson injuries, damages and/or losses.

¶ 13 The jury returned verdicts in defendants' favor on all four of Health Grades' claims and on defendants' counterclaim for abuse of process, awarding each defendant $200,000.

¶ 14 Health Grades moved for judgment notwithstanding the verdict. It argued that the verdict against it on the conversion claim should be reversed because it was contrary to the evidence, and consequently, the judgment on defendants' abuse of process counterclaim should also be reversed. It further argued that it was entitled to a judgment notwithstanding the verdict on the abuse of process counterclaim because defendants failed to prove that all of Health Grades' claims were devoid of reasonable factual support or pursued for an improper objective. Thus, it argued that there was insufficient evidence to prove that its claims constituted "sham litigation."

¶ 15 After full briefing on the motion, the court issued a written order stating merely that it could not conclude that "reasonable persons could not reach the same conclusions as the jury." It declined to enter judgment notwithstanding the verdict on any claim or counterclaim.

## II. Issues on Appeal

¶ 16 Health Grades contends that the trial court erred by denying its motions for directed verdict and judgment notwithstanding the verdict as to defendants' abuse of process counterclaim because, it contends, once its claims survived motions for summary judgment and directed verdict, they could not, as a matter of law, constitute "sham litigation." Health Grades does not specifically address in this appeal how the evidence it presented at trial demonstrates that its claims against defendants were not devoid of reasonable factual support; rather, it argues that the trial court necessarily should have reached that conclusion because it deemed the claims sufficient for submission to the jury. Thus,

Health Grades contends that the trial court erred as a matter of law by denying its motions for directed verdict and judgment notwithstanding the verdict.

### A. Standard of Review

¶ 17 We review de novo a trial court's rulings on motions for directed verdicts and judgments notwithstanding the verdict. *Hall v. Frankel*, 190 P.3d 852, 862 (Colo.App.2008). Ordinarily, where such a motion concerns a question of fact, we consider whether the evidence, viewed in the light most favorable to the nonmoving party, compels the conclusion that reasonable jurors could not disagree or that no evidence to support the verdict was received at trial. *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 982 (Colo.App.2011). In contrast, where the motion concerns questions of law, we independently determine the legal questions. *Id.* In this case, we review de novo whether the trial court applied the correct analytical framework to address Health Grades' constitutional argument.

### B. Applicable Law

¶ 18 "In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages." *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo.2007); *see also Sterenbuch v. Goss*, 266 P.3d 428, 438 (Colo. App.2011).

¶ 19 An additional showing is required to establish a prima facie case for abuse of process when the process alleged to have been abused entails the filing of "sham litigation." *Sterenbuch*, 266 P.3d at 438. The party asserting an abuse of process claim must show, under the "heightened standard" adopted in *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361, 1369 (Colo.1984) (*POME*), that the allegedly sham litigation is not immunized from liability under the First Amendment because (1) the litigation is devoid of reasonable factual support or if supportable

in fact, has no cognizable basis in law,[1] (2) the primary purpose of the litigation is to harass the other party or to effectuate some other improper objective, and (3) the litigation has the capacity to have an adverse effect on the legal interests of the other party.

¶ 20 In *Concerned Members of Intermountain Rural Electric Association v. District Court*, 713 P.2d 923 (Colo.1986), the supreme court explained that to further protect the constitutional rights of citizens to utilize legal processes for redress of grievances, when a party suing for abuse of process is confronted with a motion to dismiss, that party must demonstrate the constitutional viability of its claim. The trial court should give both parties a reasonable opportunity to present all material pertinent to the motion, treat it as one for summary judgment, and decide it under the "heightened standard" of *POME*. *Id.* at 924. The court explained:

> This standard places the burden on the party asserting the abuse of process claim to make a sufficient showing to allow the trial court to reasonably conclude that the petitioning activities on the part of the party being sued for abuse of process were not immunized from liability by the First Amendment because ... those activities are devoid of factual support or, if supportable in fact, have no cognizable basis in law....

*Id.; see also In re Foster*, 253 P.3d 1244, 1251 (Colo.2011) ("The burden for surviving the motion automatically shifts to the plaintiff, who must make a sufficient showing to permit the court to reasonably conclude that the defendant's underlying lawsuit was not protected by the First Amendment.").

¶ 21 On remand of the *Concerned Members* case, a division of this court concluded that the "heightened standard" places the burden on "the party asserting [the] abuse of process claim, to make a sufficient showing to allow the trial court to conclude that the *litigation* is not immunized under the First Amendment because *all* of the [three *POME* criteria] exist." *Ware v. McCutchen*, 784 P.2d 846, 848 (Colo.App.1989); *see also Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 862 (Colo.2004) ("We reaffirm *POME*'s holding that a motion to dismiss based on First Amendment immunity is properly decided as a motion for summary judgment.").

¶ 22 And, in *Yadon v. Lowry*, 126 P.3d 332, 337 (Colo.App.2005), a division of this court applied the *POME* factors in a purely private lawsuit between private parties, despite law review literature endorsing a more narrow application of those factors.

■ ¶ 23 Based on these cases, which describe the First Amendment protection afforded to an abuse of process defendant as a form of "immunity" and the plaintiff's claims as subject to a "heightened standard," we conclude that the correct procedure for the trial court to follow when faced with a motion to dismiss a claim of abuse of process based on sham litigation is analogous to the procedure in cases where a defendant asserts a qualified immunity under the First Amendment. *See Krystkowiak*, 90 P.3d at 863; *see also Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

¶ 24 In the qualified immunity context, even if the plaintiff's complaint alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts. *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("Immunity ordinarily should be

---

1. Health Grades urges that we follow federal antitrust cases, such as *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 51, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), which state that the first criterion of sham litigation is that it is "objectively baseless." In *In re Foster*, 253 P.3d 1244 (Colo.2011), our supreme court stated that it adopted "nearly identical principles in *POME*" to those described in *Professional Real Estate Investors, id.* at 1251, and it described the first *POME* factor as requiring a showing that the underlying litigation was "objectively baseless." *Id.* at 1254; *see also People v. Richardson*, 181 P.3d 340, 345 (Colo.App.2007). We apply the *POME* framework here because it is on point.

decided by the court long before trial."); *Air Wisconsin Airlines Corp. v. Hoeper*, 2012 CO 19, ¶ 21, 320 P.3d 830; *Conde v. Colorado State Dep't of Personnel*, 872 P.2d 1381, 1388 (Colo.App.1994) ("[B]ecause qualified immunity means immunity from suit as well as from liability, the issue should be decided as early as possible in the litigation process."); *see Freedom from Religion Foundation, Inc. v. Romer*, 921 P.2d 84, 91 (Colo.App.1996) (affirming trial court's dismissal of claims based on qualified immunity); *Conde*, 872 P.2d at 1387 (same).

■ ¶ 25 Moreover, once a qualified immunity defense is asserted, the court, and not the jury, must decide if the plaintiff can show that the defendant's conduct violated clearly established laws under an objective reasonableness test. *Abouzari v. Foster*, 795 P.2d 1386, 1389 (Colo.App.1990). A plaintiff's failure to meet this burden does not create a jury question; "[r]ather, such failure of proof will properly result in the dismissal of plaintiff's claims." *Id.*

■ ¶ 26 These qualified immunity cases offer guidance on how a trial court should apply the *POME* framework when a party asserts abuse of process based on a sham litigation theory. Thus, to ensure that the constitutional rights of citizens to utilize legal processes for redress of grievances are not infringed, when an abuse of process claim is based on a sham litigation theory, the trial court, not the jury, must determine whether an abuse of process claim meets the "heightened standard" stated in *POME. But see Technical Computer Services, Inc. v. Buckley*, 844 P.2d 1249, 1252 (Colo.App.1992) (citing *POME* and stating that "when a party [asserting an abuse of process claim] makes out a prima facie case, even though the facts are in dispute, it is for the jury, rather than the court, to resolve the conflict," while not expressly applying the *POME* framework).

## C. Argument on Appeal

¶ 27 As noted, Health Grades bases its appeal solely upon its contention that the court's denial of defendants' motions for summary judgment and directed verdict amounts to a legal conclusion that Health Grades' claims had reasonable factual support, and thus the trial court's rulings absolutely preclude a conclusion that its claims against defendants were devoid of reasonable factual support. Thus, Health Grades argues that the abuse of process counterclaim should not have been submitted to the jury, and therefore the jury's verdicts cannot stand.

■ ¶ 28 We agree that the constitutional aspect of Health Grades' defense to the abuse of process claims should have been decided by the court and should not have been submitted to the jury. But we do not agree with Health Grades' assertion that a bright-line test should be applied.

¶ 29 Health Grades cites no Colorado authority, and we have found none, for the bright-line rule it urges us to adopt—that any lawsuit that survives a motion for summary judgment or directed verdict cannot be the basis for an abuse of process claim. Health Grades cites to one federal court and state courts in Georgia and California that have adopted a rule that approaches what it urges here. *See, e.g., Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1081 (8th Cir.1999) ("firm denial" of motion to dismiss counterclaims fatal to malicious prosecution claim); *Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal.2002); *Davis v. Butler*, 240 Ga.App. 72, 522 S.E.2d 548, 550 (1999) ("Where the trial court finds in the alleged abusive litigation that such action withstands the attack by motion for summary judgment and is entitled to a trial by jury, although the plaintiff may lose at trial, such denial of summary judgment constitutes a legal determination that the action has substantial justification."); *see also Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (defining sham litigation as failing to be objectively genuine, in that it raises a "genuine issue," and subjectively genuine, in that it is "sincerely and honestly felt or experienced" (quoting *Webster's Third New International Dictionary* 948 (1986))).

¶ 30 However, state courts in Vermont and Arizona have declined to adopt such an absolute rule. *See Wolfinger v. Cheche*, 206 Ariz. 504, 80 P.3d 783, 789, 791–92 (App.2003)

("We do not agree, however, that under *all* circumstances surviving a motion for summary judgment means that a claim is objectively reasonable.... [W]e believe the better rule, and the one we adopt here, is that the defeat of a motion for summary judgment is a factor that the court should consider in determining whether there is or is not an objectively reasonable basis for a claim or defense; the denial is not, standing alone, dispositive of the issue as a matter of law."); *Bacon v. Reimer & Braunstein, LLP*, 929 A.2d 723, 727 (Vt.2007) (court looks to see if the summary judgment ruling constitutes a "qualitative merits determination").

¶ 31 We decline to adopt an all-encompassing rule that the denial of a motion for summary judgment, or the denial of a motion for directed verdict, necessarily bars a claim for abuse of process based on a sham litigation theory.

¶ 32 A summary judgment motion may be denied for a number of reasons. The trial court may not wish to sift through the voluminous documents filed in support of or against it. *See Powell Products, Inc. v. Marks*, 948 F.Supp. 1469, 1484 (D.Colo.1996) ("[The court is] under no obligation to scour the considerable reams of paper that plaintiff submitted in support of its opposition to summary judgment in search of evidence in its favor."). Or a court may exercise its discretion to deny an otherwise proper summary judgment motion on the grounds that further development of the case will sharpen the facts and law at issue, lead to a more accurate or just decision, or enhance the court's legal analysis. *See* 11 *Moore's Federal Practice* § 56.07[3][a] (Matthew Bender 3d ed.). In some cases, a court might conclude that "a trial will actually consume less court time than would be needed to determine the summary judgment motion." *Id.*

¶ 33 A directed verdict motion may be denied because a jury verdict is less likely to be reversed on appeal and, if the verdict is contrary to the court's view of the reasonableness of the claims, the court can still correct the result with a judgment notwithstanding the verdict. As one commentator notes:

[P]ragmatic considerations weigh against directing verdicts in all but the clearest cases. If the court denies the motion for directed verdict, even though the judge may find the movant's arguments very persuasive, the jury may return a verdict for the unsuccessful movant, and the jury's verdict is estimably harder to overturn on appeal than the court's grant of a directed verdict. Moreover, sending the case to the jury under these circumstances does not forever condemn an adverse verdict as beyond challenge—indeed, the court may subsequently entertain a motion for judgment notwithstanding the verdict. These pragmatic considerations may have no place in the letter of the rules, but litigators should recognize that they exist.

Stephen A. Hess, 5A Colo. Prac., Handbook on Civil Litigation § 11:1(C) (2012 ed.).

¶ 34 Indeed, the court's underlying rulings in this case illustrate that a more careful analysis, as opposed to application of the bright-line rule espoused by Health Grades, is necessary.

### 1. Denial of Summary Judgment

¶ 35 Before trial, defendants moved for summary judgment on all of Health Grades' claims, and the court denied the motion on the ground that genuine issues of material fact existed with respect to each of Health Grades' claims. However, the ruling contains little analysis of the facts or law as they relate to Health Grades' claims. *See Bacon*, 929 A.2d at 727. Such a ruling does not constitute a "qualitative merits determination" establishing that Health Grades' claims necessarily had reasonable factual support. *Id.* Nor does the ruling include findings which could support a determination that Health Grades' claims had "substantial justification." *Cf. Davis*, 522 S.E.2d at 550.

¶ 36 Moreover, because a litigant like Health Grades is generally entitled to have disputed facts regarding its claims determined by the finder of fact during trial, "it is only in the clearest of cases, where no doubt exists concerning the facts, that summary judgment is warranted." *Meyer v. Haskett*, 251 P.3d 1287, 1290 (Colo.App.2010); *Siepierski v. Catholic Health Initiative*

*Mountain Region,* 37 P.3d 537, 539 (Colo. App.2001) ("Even if.it is extremely doubtful that a genuine issue of fact exists, summary judgment is not appropriate."). Summary judgment is not appropriate if a litigant is able raise any doubt, through an affidavit or otherwise, about the existence of a genuine issue. Therefore, at the summary judgment stage in this case, the trial court resolved all doubts as to whether a genuine issue exists in favor of Health Grades' claims. *Hyden v. Farmers Ins. Exchange,* 20 P.3d 1222, 1224 (Colo.App.2000); *Capitran Inc. v. Great Western Bank,* 872 P.2d 1370, 1376 (Colo. App.1994).

### 2. Denial of Directed Verdict

■ ¶ 37 Near the close of evidence, defendants moved for a directed verdict solely on Health Grades' tort claims based on the economic loss rule. Under that rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Construction, Inc.,* 10 P.3d 1256, 1264 (Colo. 2000). The court concluded that, viewed in the light most favorable to Health Grades, the evidence established the existence of an independent duty giving rise to a claim for breach of fiduciary duty. The court further concluded that the economic loss rule did not preclude Health Grades' other claims, whether or not they were torts.

¶ 38 However, the court's ruling does not include specific findings that Health Grades' claims were not devoid of a reasonable factual basis. *Cf. Porous Media Corp.,* 186 F.3d at 1081("firm denial" of motion to dismiss counterclaims fatal to malicious prosecution claim); *Davis,* 522 S.E.2d at 550 ("Where the trial court finds in the alleged abusive litigation that such action withstands the attack by motion for summary judgment ... denial of summary judgment constitutes a legal determination that the action has substantial justification, because it is not groundless or frivolous and can proceed to jury trial.").

¶ 39 We decline to conclude that the ability to meet this low standard, particularly where the court's ruling consists of only one sentence, conclusively ·establishes that Health Grades' claims had a reasonable factual basis.

¶ 40 Thus, defendants' abuse of process counterclaim is not automatically barred because Health Grades' claims survived motions ·for summary judgment and directed verdict.

### D. Analysis

¶ 41 Nonetheless, we agree with Health Grades that the trial court erred in this case. As set forth above, the pertinent motions at both the summary judgment and directed verdict stages, although not strictly motions to dismiss, called for the trial court to determine simultaneously (1) whether Health Grades had shown that its claims had sufficient merit to be submitted to the jury, and (2) whether defendants had shown, under the heightened standard ·of *POME,* that those claims were devoid of reasonable factual support such that a counterclaim for abuse of process could be submitted to the jury on the same facts. Although, as we conclude above, allowing Health Grades' claims to go to the jury does not automatically determine that the abuse of process counterclaim must be dismissed, we nonetheless conclude that the court erred in its ruling on Health Grades' motion for directed verdict on defendants' abuse of process counterclaim.

¶ 42 The trial court, having heard defendants' argument based on the economic loss doctrine, allowed all of Health Grades' claims to go to the jury. Moments later, the court concluded, without explanation, that the abuse of process counterclaim, which required defendants to show that Health Grades' claims were devoid of reasonable factual support, could also go to the jury, and it denied Health Grades' motion for directed verdict.

¶ 43 We conclude the trial court erred for the following reasons. First, it appears from the record that in denying Health Grades' motion, the court did not apply the heightened standard required by *POME.* Certainly the court did not articulate that it was applying the heightened standard. In addition, the court allowed the jury to decide whether Health Grades claims were "devoid of rea-

sonable factual support, or, if so supportable, lacked any cognizable basis in law," as reflected by the jury instruction given on the abuse of process counterclaim. However, the cases cited above require the court, not the jury, to determine the constitutional issue and decide whether the party claiming abuse of process has made a "sufficient showing to permit the court to reasonably conclude that the [opposing party's] petitioning activities were not immunized from liability ... because ... [those] claims were devoid of reasonable factual support." *POME*, 677 P.2d at 1369.

¶ 44 Second, the error made in ruling on the directed verdict motion was not corrected by the ruling on Health Grades' motion for judgment notwithstanding the verdict. At that stage, with the benefit of the jury's verdicts denying all of Health Grades' claims, the trial court could have ruled that not only did the claims fail under a preponderance of the evidence standard, but they were also devoid of a reasonable factual basis—a different and heightened standard. The court did not make such a ruling. Instead, it first rejected Health Grades' argument that it was entitled to a judgment notwithstanding the verdict on its claim for conversion, stating only that it "cannot say reasonable persons could not reach the same conclusions as the jury." And, having decided not to overturn the verdict against Health Grades on that claim, the court denied Health Grades' motion to set aside the abuse of process verdicts without further analysis.

¶ 45 Although Health Grades' motion expressly argued that each of its four claims submitted to the jury was supported by a reasonable factual basis, the court did not address those arguments in its ruling. Again, there is no indication in the record that the court applied the heightened standard set forth in *POME*, and from the cursory ruling, it seems evident that the heightened standard was not applied.

### E. Remedy

¶ 46 Although we could review the evidence submitted at trial and determine de novo whether or not Health Grades' claims were devoid of a reasonable factual basis, we conclude that the appropriate remedy in this case is to reverse the ruling on Health Grades' motion for judgment notwithstanding the verdict and remand the case to the trial court for reconsideration of that motion. We reach this result because the briefing on appeal does not fully address the question of whether Health Grades' claims were devoid of a reasonable factual basis, and the remand better serves judicial economy due to the trial court's familiarity with the claims made and the evidence submitted.

¶ 47 On remand, the court should apply the heightened standard stated in *POME* and determine whether the claims asserted by Health Grades were devoid of reasonable factual support or had no cognizable basis in law.[2] In reaching this determination, it should consider all the evidence submitted at trial, without relying on the jury's verdicts rejecting all of Health Grades' claims. Those verdicts are based on the test of a preponderance of the evidence and do not, without more, establish that the claims were devoid of reasonable factual support.

¶ 48 If, after applying this test, the court concludes that all of Health Grades' claims were devoid of reasonable factual support or had no cognizable basis in law, it shall deny Health Grades' motion for judgment notwithstanding the verdict and reaffirm the jury verdicts in favor of defendants.[3]

¶ 49 If, on the other hand, after applying this test, the court concludes that one or more of Health Grades' claims were not devoid of reasonable factual support, and if

---

**2.** Health Grades does not argue on appeal, nor did it in its motion for a directed verdict, that defendants failed to satisfy the second or third criteria of *POME*. Therefore, neither we nor the trial court on remand needs to consider them.

**3.** In their first amended counterclaim, defendants allege that Health Grades "had an ulterior motive and improper purpose in filing suit

against [them]"; its "claims lack reasonable factual basis and cognizable basis in law and are a sham"; and its "continued prosecution of this case is improper." Accordingly, to prevail on their abuse of process counterclaim, defendants must show that *all* of Health Grades' claims that were then pending were a sham.

supportable in fact, had a cognizable basis in law, it shall grant the motion for judgment notwithstanding the verdict and vacate the jury verdicts on defendants' abuse of process counterclaim.

¶ 50 The court may allow supplemental briefing on these issues but may not take additional evidence. The court's ruling after remand may be appealed to this court.

### III. Conclusion

¶ 51 The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

### IV. Petition for Rehearing

¶ 52 On November 23, 2012, defendants filed a petition for rehearing in which they argue that they should not be required to show on remand that all of Health Grades' claims were "devoid of reasonable factual support, or, if supportable, lacked any cognizable basis in law." Rather, they argue that they should have to show only that "specific elements of [Health Grades'] claims are a sham." We disagree, and the petition for rehearing is denied.

¶ 53 In addition, after we issued the opinion in this case, our supreme court announced *General Steel Domestic Sales, LLC v. Bacheller*, 2012 CO 68, 291 P.3d 1 (2012). Defendants filed a notice of supplemental authority referring to *General Steel* and arguing that it stands for the proposition that "purely private litigation" does not constitute petitioning activity that is subject to First Amendment protection, and therefore, when alleged to be "sham litigation," does not have to meet the "heightened standard" under *POME*. We directed the parties to file supplemental briefs addressing the implications, if any, that *General Steel* has on our opinion.

¶ 54 Defendants filed a notice of cross-appeal in this case, indicating their intention to argue that the trial court erred by instructing the jury that they were required to prove that "plaintiffs' entire lawsuit was devoid of reasonable factual support" to prevail

on their claim for abuse of process. However, defendants did not brief this issue on appeal. Instead, they argued that Health Grades' First Amendment rights were protected by the trial court's application of the "heightened standard" of *POME*. We thus conclude that defendants abandoned the argument that they now seek to raise through their citation to supplemental authority. Moreover, for several reasons, we also conclude that *General Steel* does not require us to withdraw our opinion.

¶ 55 In *General Steel*, the trial court declined to give a "heightened standard" jury instruction with respect to the plaintiff's claim that the defendants' commencement of an arbitration proceeding constituted malicious prosecution.[4] The supreme court affirmed, stating: "We hold that, consistent with the *Noerr-Pennington* doctrine on which it is based, *POME*'s heightened standard does not apply where, as here, the underlying alleged petitioning activity was the filing of an arbitration complaint that led to a purely private dispute." *Id.* at ¶ 32. The holding, therefore, does not suggest an exception to the *POME* "heightened standard" unless the underlying "petitioning activity" was the filing of an arbitration complaint in a purely private dispute.

¶ 56 The supreme court further emphasized in *General Steel* that "Defendants initiated a private arbitration action pursuant to a binding arbitration clause in an employment contract. As such, they did not petition any branch of government for a redress of grievances." *Id.* at ¶ 34 (citation omitted). The court concluded that "even assuming that the right to petition is implicated whenever a party exercises his or her right of access to the courts, [the defendants] did not 'use the channels and procedures of . . . [the] courts to advocate their causes and points of view.'" *Id.* (footnote omitted) (quoting *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)).

¶ 57 Although Health Grades' complaint in the instant case, which gave rise to defen-

4. The trial court did give a "heightened standard" instruction on the plaintiff's claim alleging abuse of process, and the jury rendered a verdict in favor of the defendants on that claim. The plaintiff did not cross-appeal that result.

dants' abuse of process counterclaim, framed a purely private dispute, it was not filed as an arbitration demand, but rather as a complaint in a Colorado district court.

¶ 58 *General Steel* also quotes *California Motor Transport Co.*, 404 U.S. at 510, 92 S.Ct. 609, for the proposition that "[t]he right of access to the courts is indeed but one aspect of the right of petition," *General Steel*, ¶ 18, and states that the Supreme Court has "recognized that the First Amendment right to petition includes the right of access to the courts." *Id.* at ¶ 33.

¶ 59 Prior cases have recognized that the First Amendment right to petition includes the right of access to the courts, even in the case of a private dispute. In *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), where an employer sued an employee in state court for defamation, the Supreme Court stated:

> We should be sensitive to these First Amendment values in construing the [National Labor Relations Act] in the present context. As the Board itself has recognized, "going to a judicial body for redress of alleged wrongs ... stands apart from other forms of action directed at the alleged wrongdoer. The right of access to a court is too important to be called an unfair labor practice solely on the ground that what is sought in court is to enjoin employees from exercising a protected right."

*See also Cal. Motor Transp. Co.*, 404 U.S. at 510-11, 92 S.Ct. 609 (where competing groups of trucking companies sued other highway carriers alleging antitrust violations, the Supreme Court stated: "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition [subject to an exception if the litigation is shown to be a 'sham']."); *Concerned Members*, 713 P.2d at 924 (where members of electric cooperative sued to compel recall election of its directors, our supreme court ruled that *POME* requires cooperative "to make a showing sufficient to permit the district court to reasonably conclude that the petitioning activities in question were not constitutionally immunized from liability" under First Amendment); *Foster*, 253 P.3d at 1254-55 (where attorney charged, in discipline case, with abusive pro se litigation conduct against his wife in their divorce proceeding, *POME* applies); *Yadon*, 126 P.3d at 337.

¶ 60 Defendants' supplemental brief relies primarily on the following sentence from a footnote in *General Steel*: "We do not mean to suggest that Defendants' initiating an arbitration action, rather than filing a lawsuit in court, is in itself totally dispositive of the *POME* question." *General Steel*, ¶ 34 n.7. Defendants interpret this footnote to mean that whether a dispute arises in arbitration or a lawsuit, "it is the private nature of parties and claims which renders a lawsuit a purely private dispute" and takes the dispute outside the "heightened standard" required in *POME*. We do not read this footnote to be dispositive.

¶ 61 In *General Steel*, the supreme court introduced its discussion of this issue by describing two contentions made by the defendants arguing for application of the "heightened standard"—first, that under *POME*, filing an arbitration complaint constitutes petitioning the government; and second, that *Foster*, 253 P.3d 1244, precludes application of *POME* where the "underlying alleged petitioning activity involves a purely private dispute." *General Steel*, ¶ 31.

¶ 62 Thus, the *General Steel* opinion was postured to compel a conclusion that the case would not be subject to the heightened standard of *POME* if either the asserted petitioning activity was the filing of an arbitration or the dispute was purely private. However, in *General Steel* the court concluded that both conditions were met. Therefore, we do not read its opinion to hold that satisfying either condition is sufficient to avoid the application of the *POME* standard, for two reasons.

¶ 63 First, in footnote 7, the supreme court rejected the notion that filing an arbitration proceeding could never be considered petitioning the government:

> We do not mean to suggest that Defendants' initiating an arbitration action, rather than filing a lawsuit in court, is in itself totally dispositive of the *POME* question. *See Judd Constr. Co. v. Evans Joint Ven-*

*ture,* 642 P.2d 922, 924 (Colo. 1982) (encouraging the use of arbitration as an "efficient, convenient alternative to litigation"). Rather, we also find persuasive the fact that the arbitration action here was a purely private dispute brought pursuant to a binding arbitration clause in an employment contract between private parties. We are not here faced with an arguably different situation in which the arbitration was somehow required by law (although we are unaware of any mandatory arbitration statutes in Colorado), or where a governmental entity is a party to the arbitration, such that filing the arbitration could be considered "petitioning the government" under the First Amendment and *POME*. *General Steel,* ¶ 34 n.7 suggested that the heightened standard might apply if the arbitration were required by law or involved a governmental entity.

¶ 64 Second, we read the "even assuming" sentence quoted above as avoiding the question whether a purely private dispute, if brought as a lawsuit, is exempt from the heightened standard. The court went on to state:

> *Fosterr* does not compel a contrary conclusion. In deciding that *POME* should be applied in attorney discipline cases where an attorney has been charged with abusive pro se litigation conduct, we did not necessarily extend *POME* to situations where the underlying petitioning activity constituted a purely private dispute. ... We were not asked to address what type of activity constitutes "petitioning the government" in *Foster,* and we did not purport to resolve that issue in that case.

*Id.* at ¶ 35.

¶ 65 Accordingly, because *General Steel* does not decide that the *POME* "heightened standard" is applicable to private party disputes when one party seeks to petition the government by means of bringing a judicial proceeding, we decline to withdraw our opinion in this case.

Judge ROY and Judge DAILEY concur.